UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| JAMEY W. PRESLEY, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 2:11-cv-0103 |
| v. ) | Judge Nixon/Brown |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
|     Defendant. ) | |

To:   The Honorable John T. Nixon, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), as provided under Title XVI and Title II of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Response. (Docket Entries 13, 14). The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 9). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **GRANTED** and this action be **REMANDED pursuant to Sentence Four of 42 U.S.C. 405(g) with directions to the Administrative Law Judge to reconsider the issues set forth below.**

### I. INTRODUCTION

Plaintiff first filed for DIB and SSI on December 12, 2008 with a protective filing date of December 2, 2008. (Tr. 15, 118-126, 127-129). His claims were denied initially on March 25,

1

2009 and on reconsideration on June 22, 2009. (Tr. 15). At Plaintiff's request, a hearing was held on May 5, 2010, before Administrative Law Judge (ALJ) James A. Sparks. (Tr. 12-15). Plaintiff was represented by non-attorney representative Tina Foster, referred to as "attorney for claimant" in the hearing transcript. (Tr. 29-57). At the hearing, Plaintiff amended his alleged onset date to December 1, 2007. *Id.* The ALJ issued an unfavorable decision on July 2, 2010. (Tr. 12-14).

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2. The claimant has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*).

3. The claimant has the following severe impairments: back disorder, hypertension, affective disorder, and anxiety-related disorder (20 CFR 404.1520(c) and 416.92(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds tht the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except walk/stand or sit, with normal breaks, a total of 8 hours in a workday. Foot control operation is limited to frequent bilateral use due to back disorder, and occasionally can climb ladders, ropes and scaffolds. He should avoid concentrated exposure to vibration. The claimant has mild to moderate impairment in understanding and recalling instructions, but could perform simple repetitive tasks. His concentration, persistence, and pace are mild to moderate in concentration skills, and persistence, he has the ability to maintain a competitive pace. He is mildly to moderately limited regarding social interaction with coworkers, and supervisors, but can still do (sic). He is only mildly to moderately limited in his ability to adapt to changes found in most work situations.

6. The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On July 29, 2011, the Appeals Council denied Plaintff's request for review. (Tr. 3-8). Plaintiff filed this action for judicial review on April 4, 2012. (Docket Entry 14).

## II. REVIEW OF THE RECORD

Plaintiff was born on August 16, 1979. (Tr. 32). He was 27 years old at the time of the onset of his alleged disability on December 1, 2007. *Id.* Plaintiff is single, and lives with his girlfriend and their nine-year-old son. (Tr. 309). His girlfriend is also disabled and does not work. (Tr. 310). Plaintiff graduated from high school with a Special Education diploma. (Tr. 55). At age 17, while in 10th grade, Plaintiff achieved a Wechsler Adult Intelligence Full Scale Score of 78, which placed him in the Low Average classification. (Tr. 207). Overall Plaintiff was found to have the intellectual functioning at a level equal to or better than approximately 7% of his peers. (Tr. 208).

Plaintiff claims he is physically disabled due to hypertension, and degenerative and discogenic disorders of the back. (Tr. 59, 61, 153). He alleges that he has sharp, stabbing lower back pain that radiates into his left leg, through the tip of his toes. (Tr. 33, 40). He reports this pain as 8 on a 1-10 point scale. (Tr. 35). He says this pain has persisted for three or four years. (Tr. 40). He takes ibuprofen, but reports this helps very little. *Id.* He also reports anxiety, depression and cognitive deficits. (Tr. 311-12).

Plaintiff reports that he can only stand for twenty minutes at a time, sit in a straight chair for 20 minutes without pain, and lift a five-pound bag of sugar. (Tr. 34). Plaintiff claims he has had muscle spasms that prohibit him from fully bending. (Tr. 41-41). He alleges the pain is so

severe that he is unable to sleep well, which impacts his ability to do chores around the house. *Id.* (Tr. 45). He reports that he is able to dress and bathe himself. (Tr. 34). He does take the trash out and sometimes help with the preparing simple meals like a sandwich, but he says he cannot follow simple cooking instructions. (Tr. 51, 310). He also helps take care of his son and assists his son with getting on the bus. (Tr. 311). He has a driver's license though reports relying on family or friends to take him to the grocery store or to appointments. (Tr. 32, 311). Day to day, Plaintiff reports just sitting around the house in a recliner. (Tr. 311). Dr. Jamie Coogle of the Overton County Health Department has recommended back surgery. (Tr. 40). Plaintiff reports he does not have the funds. *Id.* He does, however, report smoking one-half to one pack of cigarettes per day. (Tr. 310). When he had insurance and was taking injections at the pain back clinic he states his pain level was a three to four out of ten. (Tr. 42).

Plaintiff also alleges mental and mood disorders. (*Id.*) He says he has trouble remembering things, including his son's medical appointments and medication. (Tr. 47). He says he has trouble following the plot on TV and is unable to do a puzzle book or help his son with his homework. (Tr. 34, 50). He says he is irritable and just wants to be left alone all day long about three to four times a week. (Tr. 44). Plaintiff believes that in a work setting he might have to walk off the job if he got behind on an assembly line. He claims he would not adapt well to a job that required different tasks each day because change makes him irritable. (Tr. 48, 52). He reports that he does not think he could make decisions because he cannot tell right from wrong, and cannot remember simple one or two-step tasks. (Tr. 49). Plaintiff reported he has overall anxiety and depression symptoms of a 9 out of 10 in terms of severity. (Tr. 312). Though the Overton County Health Department recommended he seek treatment from the Mental Health Co-

4

op, he reports that he does not receive treatment for his anxiety and depression due to his lack of funds. (Tr. 45).

A psychological evaluation was performed on February 27, 2009 by Mark Loftis, M.A. (Tr. 309). Plaintiff was diagnosed with anxiety disorder and depressive disorder. (Tr. 311). Plaintiff was found to be moderately limited in his social interaction skills necessary to deal with co-workers and supervisors. *Id.* He was found to be "moderately to moderately" limited in his ability to adapt to changes found in most work situations[1]. *Id.* His ability to remember things was mild to moderate though Mr. Loftis found that simple, repetitive tasks were unlikely to be impaired. (Tr. 312). Mr. Loftis reported Plaintiff's concentration, skills, persistence and ability to maintain a competitive pace to be mildly to moderately impaired. (Tr. 312). Plaintiff was found to be likely able to handle his finances, consistent with his current ability to jointly manage bills with his girlfriend. (Tr. 310, 312).

On March 15, 2009 the state agency's non-examining physician, Salley S. Jessee, M.D. reviewed Mr. Loftis's evaluation and completed a psychiatric review technique. (Tr. 323-36). Dr. Jessee diagnosed Plaintiff with affective disorder and anxiety disorder. (Tr. 323). Dr. Jessee reported this impairment as "not severe," and reported that these impairments would cause a mild degree of limitation activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (Tr. 323, 333). Within the consultant's notes, Dr. Jessee noted that Plaintiff's report of his psychological symptoms was not credible, and Mr. Loftis's consultative examination should be given little weight because it is not consistent with Mr. Loftis's objective

---

[1] Plaintiff believes this is a transcription error and should read "moderately to markedly." (Docket Entry 13). The Commissioner concedes that this should be "moderately to markedly" as contended by the Plaintiff. (Docket Entry 14, p. 9).

findings or Plaintiff's limited history of treatment. (Tr. 335). On May 26, 2009, Victor L. O'Bryan, Ph.D. reviewed Dr. Jessee's report and affirmed it as written. (Tr. 337).

On March 3, 2009, Saul Juliao, M.D., the state agency's non-examining physician, reviewed Plaintiff's file and completed a residual functional capacity assessment (RFC) assessment. (Tr. 314-22). Dr. Dr. Juliao deems Plaintiff's symptoms credible and confirms that back strain can produce the pain Plaintiff reports. (Tr. 319). Dr. Juliao's report, however, conflicts with Plaintiff's subjective reports of how much he can lift and how long he can stand or sit. Dr. Juliao reports that Plaintiff can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk with normal breaks for about six hours in an eight hour workday, and sit for about six hours in an eight hour workday. (Tr. 315). Dr. Juliao did note Plaintiff would have frequent limitations climbing ramps or stairs, stooping, kneeling, crouching, and crawling, and would have limitation in the lower extremities. (Tr. 315-16). Dr. Juliao also recommended that Plaintiff avoid concentrated exposure to vibration. (Tr. 318). On June 1, 2009, Reeta Misra, M.D. reviewed Plaintiff's medical record and found that the documentation indicated severe impairment that fell short of [disability] listings. (Tr. 338). Dr. Misra affirmed Dr. Juliao's prior decision.

Between 1997 and 2004, Plaintiff has worked as a grocery store bagger, saw operator, batch room operator at a chocolate drink manufacturer, security guard, and roofer. (Tr. 154). He worked as a grocery store bagger for six months in 1997, and then two weeks in the summer of 2003. *Id.* As a grocery store bagger, Plaintiff reports walking, standing, kneeling, and crouching for eight hours a day, frequently carrying stock up to 50 pounds. (Tr. 172). Plaintiff worked as a

security guard for over two years, from April 20, 2002 through April 23, 2004[2]. (Tr. 154, 172). His Disability Report lists this as his longest held job. *Id.* While working as a security guard, Plaintiff logged trucks in and out of the parking lot, walked the building checking doors, lifted a weight of 10 lbs, and carried a time clock on rounds performed every other hour. *Id.* at 155. Plaintiff worked as a roofer from May 2006 through May 2007 and alleges that he stopped working because of his medical condition. (Tr. At 162). He further contends that after working for only a month between October 2007 and November 2007 as a fencer, he was also forced to stop working due to his medical condition. *Id.* In 2007, Plaintiff reported earning $4,700. (Tr. 32).

The state's vocational expert (VE), Jane Hall, testified at the hearing on May 5, 2010. The ALJ asked whether a 24 year old with a 12th grade education, who can walk, sit and stand for six hours out of an eight hour day, who could lift twenty pounds occasionally, and frequently lift ten pounds, who had limited upper extremity, who currently has no mental treatment, and whose mental ability is mild to moderate in understanding and remembering, mild to moderate in concentration, persistence, and pace, and who has moderate social abilities, adaptation abilities would be able to either return to prior jobs or perform any jobs in significant number. (Tr. 54). The VE stated the person could return to his job as a security guard, the grocery store bagger, but not his prior job as a saw operator, a roofer or a batch room operator. *Id.* When asked about the availability of work for someone who could only lift five pounds, and stand for only two hours in

---

[2] This figure is taken from Plaintiff's Disability Report. (Tr. 154). There is a typo as the end date is listed as 204 for the year. It is assumed that this should be 2004. Plaintiff's Work History report contradicts this figure, and lists that he only worked as a security guard from October 2002 through January 2003. (Tr. 172).

an eight hour period, the VE stated the claimant could not return to any of his prior work. (Tr. 56). When given a limitation of the Plaintiff lifting only five pounds, the VE stated that there would be no work available in the national or regional economy. *Id.* The VE was not given hypotheticals that isolated the work requirement based only on mental or mood impairments. (Tr. 55-57).

Plaintiff does not currently have health insurance but uses the local health department and emergency room for medical care (Tr. 310). The only medication he is currently using is Ibuprofen. *Id.* When he was in jail in 2007, he was prescribed Prozac. *Id.* He also reports having been prescribed some type of "nerve medication" when he was seeing Dr. P.K. Jain of Cookeville. *Id.* He reports smoking half a pack of cigarettes per day, but denies alcohol or drug use. *Id.*

From September 25, 2006 though March 16, 2010, Plaintiff frequented various County Health Departments seeking treatment for back pain and mental illness. (Tr. 339-374). On August 13, 2007, Plaintiff sought a doctor's note to return to work after a heavy bail of wire fell on top of him, resulting in back spasms. (Tr. 372). Plaintiff requested that the note state that he could lift over 150 pounds. *Id.* The treating physician noted that Plaintiff "emphatically states that he can resume his usual work responsibilities." *Id.* On November 10, 2008, Plaintiff complained of lower back discomfort without any report of injury. (Tr. 359). Plaintiff was prescribed iburprofen and flexeril. *Id.* On February 18, 2009, Plaintiff sought treatment for back pain that was radiating down his leg and disrupting his sleep. (Tr. 357). Plaintiff reported that two days earlier he had helped to move a freezer. *Id.* Patient was prescribed iburprofen, prednisone, and cyclobenzaprine. *Id.* On May 26, 2009, Plaintiff sought treatment for back pain. (Tr. 355). Plaintiff was prescribed ibuprofen, prednisone, and flexeril for his back impairment,

8

and fluoxetine for mental illness. (Tr. 356). On June 22, 2009, Plaintiff received a refill of fluoxetine for his depression. (Tr. 353). On June 29, 2009, Plaintiff went to Tennessee Department of Health complaining of back pain that "never stopped." (Tr. 351). Plaintiff reported no new injury and was prescribed ibuprofen plus told to call the Mental Health Co-op for an appointment. (Tr. 352). The treating doctor assessed Plaintiff as schizophrenic. *Id.* On September 9, 2009, Plaintiff sought medical treatment after falling off a roof on September 2, 2009. (Tr. 345). Plaintiff reported twisting his left knee and ankle causing a sharp pain and slight swelling. *Id.* Plaintiff sought prescription pain medication but was denied. (Tr. 346)

Plaintiff also reported to the emergency room several times due to back pain. (Tr. 375). On February 21, 2004, Plaintiff came to the emergency room for leg pain, swelling and edema. (Tr. 253). The treating physician found no evidence of deep venous thrombosis. (Tr. 257). On September 2, 2009, Plaintiff went to the emergency room after he slipped while walking down a hill. (Tr. 377). Plaintiff reported twisting his left ankle and injuring his back. *Id.* Physician noted soft tissue swelling, but no bony abnormalities. (Tr. 381). Plaintiff was given crutches, an ace bandage to immobolize his knee, and a prescription for iburprofen and tramadol. (Tr. 378, 380).

Plaintiff also sought treatment from the Cumberland Back Pain Clinic and a chiropractor from August 24, 2004 to December 8, 2006. On August 24, 2004, Dr. Kabasakal performed an x-ray of Plaintiff's lower spine. (Tr. 294). Dr. Kabasakal reported no fractures, dislocations, or other bone or joint abnormality. *Id.* Dr. On September 22, 2004, Dr. Kabasakal again performed an x-ray on Plaintiff's lower spine. (Tr. 295). The spine was reported as normal, with lumbar vertabrae in proper alignment, discs well spaced, and no fracture or dislocation noted. *Id.* On

9

December 7, 2004, an MRI of the spine was performed. (Tr. 292). Plaintiff was diagnosed with degenerative disc disease at L4-5 with associated annular fiber tears and a left paracentral disc herniation at L5-S1. *Id.* On May 4, 2005, a CAT scan of Plaintiff's spine was performed. (Tr. 291). Plaintiff was diagnosed with very early degenerative facet joint arthrosis of the lower lumbar spine, with no evidence of disc herniation or spinal stenosis. *Id.* On May 31, 2005, Plaintiff went to the Abston Chiropractic complaining of sharp, constant pain in his back, left leg, and right shin. (Tr. 260). Plaintiff states that his girlfriend fell on his back seven months prior. (Tr. 263). On November 14, 2005, Plaintiff received joint injections for pain. (Tr. 288). Plaintiff again received injections on January 9, 2006 and October 25, 2006. (Tr. 276, 280). Plaintiff reports that these injections lowered his pain from a level of 9 out of 10 to 3 or 4 out of 10. (Tr. 42). On November 7, 2006, Plaintiff received a trial of MS-Contin with two refills. (Tr. 275). On November 21, 2006, he was prescribed MSIR. (Tr. 272). On December 8, 2006, Plaintiff received four additional four refills for MS-Contin and MSIR. (Tr. 271).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

Plaintiff cites three alleged errors committed by the ALJ. First, the ALJ failed in his heightened duty to properly develop the record for a claimant who was not represented by an attorney. (Docket Entry 13). Second, the claimant's allegations were improperly rejected without the assessment of credibility which is required by the C.F.R. Section 404.1529, as explained in Social Security Ruling 96-7p. *Id.* Third, the ALJ erred in finding that the claimant could return to past relevant work as a security guard.

A.  <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.    Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

C. The ALJ did not properly develop the record.

An administrative law judge has the ultimate responsibility for ensuring that every claimant receives a full and fair hearing. *Richardson v. Perales*, 402 U.S. 389 (1971). In *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983), the Court explained that "an administrative law judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him." *Lashley*, 708 F.2d at 1051. The Court held that "[t]here is no bright line test for determining when an administrative judge has assumed the role of counsel or failed to fully develop the record. The

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

determination in each case must be made on a case to case basis." *Id.* at 1052. However, appearing without counsel is not alone cause for error. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) ("[W]hen a claimant appears without counsel, the mere fact that a claimant is not represented is not grounds for reversal.). Absent such special circumstances such as when a plaintiff is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing proceedings, the Plaintiff bears the ultimate burden for proving disability. *Tranadir v. Comm'r of Soc. Sec.*, 58 Fed.Appx. 113, 115 (6th Cir. 2003). C.F.R. Section 404.1512(a). 20 C.F.R. Section 416.1505.

During the May 5, 2010 hearing, Plaintiff was represented by Tina Foster, a non-attorney representative employed by Disability Consulting, LLC. (Tr. 240). Ms. Foster's representation of Plaintiff creates two issues. First, whether a non-attorney representative relieves the ALJ of his heightened responsibility to develop the record. Second, whether the ALJ mistook Ms. Foster for an attorney, and thus failed to properly develop the record due to this error. A case must be remanded if the ALJ had a heightened responsibility to develop the record, failed to due so, and if this error created prejudice toward the Plaintiff. *Bowen v. Commissioner*, 478 F.3d 742, 745 (6th Cir. 2007). ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follows its own regulations and where that error prejudices a claimant on the merits or deprives a claimant of a substantial right.")

The Sixth Circuit has addressed whether a non-attorney representative relieves an ALJ of his heightened duty to develop the record in two unpublished cases[4]. In *Ison v. Commissioner of*

---

[4] Other courts have consistently held that an ALJ still has a heightened duty to develop the record even when the plaintiff is represented by a non-attorney representative. *See Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995); *Beth v. Astrue*, 494 F.Supp.2d 979 (E.D. Wis. 2007).

13

*Social Security*, 172 F.3d 48, *1 (6th Cir. 1998) (unpublished), the plaintiff alleged err because the court "failed to account for the fact that she was represented by only a paralegal" during her initial benefit hearing. The Court held that because the Plaintiff was represented by counsel in the subsequent appeals hearing, and because counsel did not claim that the Plaintiff had been compromised by the lack of attorney representation in the prior hearing, the Plaintiff's rights were not compromised. *Id.* The Court did not hold that representation by a non-attorney relieved the ALJ's heightened duty to develop the record, merely that the ALJ's failure to develop the record was harmless error. The case at bar is distinguishable from *Ison* because, as will be shown, the ALJ's failure to develop the record created prejudice toward the Plaintiff.

In *Lamdin v. Commissioner of Social Security*, 62 Fed.Appx. 623 (6th Cir. 2003) (unpublished), the Court held that the Plaintiff, who was represented by a lay representative, fell under the exceptions set by *Lashley* insofar as "he was not represented by counsel before the ALJ, and it [was] unclear whether he was able to present an effective case" due to his sixth grade education and possible illiteracy. *Lamdin*, 62 Fed.Appx. at 625. Though the Court opined that whether the ALJ failed in his duty was a "close question," it concluded that the "record cries out for clarification." *Id.* Plaintiff's case closely mirrors *Lamdin*. Like the Plaintiff in *Lamdin*, the Plaintiff in the present case falls appears without counsel, is not able to present an effective case due to his low average intelligence, and is unfamiliar with the proceedings. The record, as will be shown, contains ambiguity that may determine whether or not he is deemed disabled and thus also "cries out for clarification." Even though the Plaintiff in the present case was represented by a representative, previous Sixth Circuit opinions have held that this does not relieve the ALJ of his heightened duty to develop the record. *Ison*, 172 F.3d at *1; *Lamdin*, 62 Fed.Appx at 625.

Therefore, based on Court precedent from *Lashley* and *Tranadir,* the ALJ had a heightened duty to develop the record in this case.

In addition, inconsistent evidence exists on whether or not the ALJ mistook Tina Foster for an attorney. If the ALJ believed Tina Foster was an attorney, he would not have known of his heightened responsibility to develop the record. On one hand, the ALJ had sufficient notice that Plaintiff was not represented by an attorney at the appeal hearing on May 5, 2010. Form SSA-1696-U4, dated April 1, 2009 and filed with SSA Cookeville TN on May 18, 2009, lists both Carl Groves and Tina's Foster's names as Plaintiff's representatives. (Tr. 69). Both Carl Groves and Tina's Foster's signatures and contact information appear on this form. *Id.* The box, "I am a non-attorney who is eligible to receive direct payment," has been checked on this form. *Id.* Yet, on the transcript of the May 5, 2010 hearing, Tina Foster is listed as "Attorney for Claimant" and is referred to as attorney throughout the hearing transcript. (Tr. 29-58). The hearing decision letter from July 2, 2010 refers to Ms. Foster as "the attorney." (Tr. 19). However, during the hearing, the ALJ referred to Ms. Foster as the representative, not the attorney, when he asks the VE if she has discussed the merits of the case "with the claimant or the representative or myself." (Tr. 53). Overall, sufficient evidence exists suggesting that the ALJ may have mistook Tina Foster for an attorney and that this may have affected the ALJ's development of the record.

The ALJ's failure to develop the record prejudiced the Plaintiff. The psychological evaluation performed by Mark Loftis states Plaintiff is "moderately to moderately limited in his ability to adapt to changes found in most work situations." (Tr. 312). When Ms. Foster brought up the transcription error from the Loftis report in the May 2010 hearing, the ALJ responded, "Yeah, I noticed that . . . Right." (Tr. 38). Ms. Foster responded that she assumed Mr. Loftis meant

15

moderate to markedly. *Id.* The ALJ does not respond to this point. *Id.* Notably, the ALJ's hypothetical to the VE asks of someone who has "moderate adaption abilities" but does not include the upper threshold of marked adaption abilities (Tr. 54). Moreover, the July 2, 2010, Notice of Decision–Unfavorable letter, states that the Plaintiff's ability to adapt was "mild to moderately limited but could still perform simple repetitive tasks, maintain a competitive pace . . . [and] adapt to changes to most environments." (Tr. 18). While the ALJ did not have a duty to act as counsel for Plaintiff, he did have a heightened responsibility to develop the facts of the case. *Richardson*, 402 U.S. at 409. ("The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts."). The ALJ should have clarified whether Mr. Loftis evaluated Plaintiff as "mildly to moderately" or "moderately to markedly" limited in his ability to adapt. An ALJ's duty to develop the record is met if he "probes the claimant for possible disabilities and uncovers all the relevant evidence." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The ALJ failed to uncover all the relevant evidence by not clarifying Plaintiff's accurate level of social adaptability. The Commissioner now concedes in his response that Plaintiff's social adaptability should read "moderately to markedly." (Docket Entry 14, p. 9).

Whether Plaintiff has moderate or marked adaptation limitations affects the type of work he is capable of performing and thus whether he is considered disabled. SSR 85-15, 1985 WL 56857 (S.S.A.) (January 1, 1985). Social Security Ruling 85-15 discusses the mental requirements for unskilled work. This Ruling states the mental requirement "for competitive, remunerative, unskilled work include the abilities (on a sustained basis) to . . . deal with changes in a routine setting. A substantial loss of ability to meet any of these work-related activities would severely limit the potential occupational base." A finding by Mr. Loftis that Plaintiff is markedly limited in

16

adaptability may limit the potential occupational base to such an extent that a finding of disability may result. Though Defendant points to the finding by the reviewing psychiatrist and psychologist indicating only mild anxiety and depression by Plaintiff, the opinion of a non-examining physician is entitled to little weight if contrary to the opinion of the consulting physician. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Lashley*, 708 F.2d at 1054. As such, given that the ALJ had a heightened duty to develop the record, failed to do so, and this failure resulted in a gap in the record that may prejudice the Plaintiff, the case should be remanded for further development.

Plaintiff also alleges that the ALJ was required to authorize additional intelligence testing. (Docket Entry 13). Plaintiff's intelligence was tested at age 17, using the Wechsler Adult Intelligence test. (Tr. 207). Plaintiff was found to have low average intelligence. *Id.* The Sixth Circuit previously held that an IQ score received at age 14 was adequate to assess a claimant's intelligence in a Social Security claim brought when Plaintiff was age 25. *Burrell v. Commissioner of Social Security*, 238 F.3d 419 (6th Cir. 2000) (unpublished). *See also Bilka v. Commissioner*, 252 F.Supp.2d 472 (N.D. Ohio 2002). The Sixth Circuit has also held that the Secretary was not required to purchase a consultative examination in order to assist the claimant in establishing disability. *Foster v. Halter*, 279 F.3d 348, 355-56 (6th Cir. 2002). The ALJ thus properly relied upon the IQ score Plaintiff received at age 17. Moreover, this score was properly used in determining the occupational possibilities of the Plaintiff. In the hypothetical to the VE, the ALJ asked the occupational possibilities for a person whose mental ability is "mild to moderate in understanding and remembering [and] . . . concentration." (Tr. 54).

D.    <u>The ALJ properly assessed Plaintiff's credibility.</u>

The ALJ found that "the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment . . . and when viewed in light of the medical findings." (Tr. 20, 21) The ALJ cited the Plaintiff's lack of "evidence of inordinate pain or discomfort while testifying at the hearing, which is a favor in the overall analysis." *Id.* The ALJ does note that the hearing was "short-lived" and thus should only be given "some slight weight in reaching the conclusion regarding the credibility of the claimant." *Id.* The ALJ, however, gives great weight to the opinion of Dr. Juliao and notes that the "record does not contain any opinions from treating or examining physicians indicating the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 22). The ALJ further cites Plaintiff's physical accompanying his request on August 13, 2007 for a doctor's note to return to work from the County Health Department. *Id.* During this physical Plaintiff was able to flex forward to about 6" above the ground with only mild discomfort, toe and heel walk without problems, straight leg lift with only mild discomfort. (Tr. 22, 372). The ALJ concludes that Plaintiff's physical impairments are controlled with medication or injections. *Id.* Though Plaintiff contends a lack of funds for such health care, the ALJ notes Plaintiff's smoking of one pack of cigarettes per day[5]. *Id.*

An ALJ's finding regarding the credibility of Plaintiff's subjective complaint's of pain must be given great deference. *Blacha v. Secretary of H.H.S.*, 927 F.2d 228, 230 (6th Cir.1990). The ALJ does not dismiss Plaintiff's assessment of pain but finds that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however,

---

[5] The ALJ does not cite the source for this information. Plaintiff reports smoking 10-15 cigarettes on the Health Questionnaire completed on September 25, 2006, 8-10 cigarettes a day on the Health Questionnaire completed on November 11, 2008, and one-half pack per day on his Psychological Evaluation by Mr. Loftis. (Tr. 298, 300, 310).

18

the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Tr. 20). The ALJ cites extensively to the Plaintiff's medical history, work history, and the relief Plaintiff is able to obtain from prescription pain medication and injections. (Tr. 21). Therefore, the ALJ gave adequate reasons for not finding the Plaintiff's subjective complaints of pain as credible. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's assessment thus must be given deference as substantial evidence exists to support this conclusion. *Landsaw*, 803 F.2d at 213.

E.  <u>Until the record is further developed it is inconclusive whether Plaintiff could work as a security guard.</u>

The ALJ found that based on the RFC and testimony of the VE, the claimant could return to his past work as a security guard, which is classified as light exertion semi-skilled work. (Tr. 22). The ALJ found that "even though it is more than unskilled or simple work, the claimant was familiar with the job functions, and no record shows that he was ever fired from such job because he was functioning at a lower level of functioning." *Id.* However, whether or not Plaintiff can return to work as a security guard will be based upon the further development of the record concerning Plaintiff's level of adaptability.

The record is also inconsistent as to when Plaintiff worked as a security guard. The ALJ should further develop the record to clarify when Plaintiff worked as a security guard so that he can properly assess whether this work counts as a successful work attempt under 20 C.F.R. § 404.1574(c)(3) and 20 C.F.R. § 416.974(c)(3). Plaintiff's Disability Report lists Plaintiff employed as a security guard from April 20, 2002 through April 23, 2004. (Tr. 154). Plaintiff is listed as

19

working twelve hours per day, two days per week, at a rate of $6.00/hour. *Id.* This is recorded as Plaintiff's longest job held. *Id.* Yet, in Plaintiff's Work History report, Plaintiff lists working as a security guard for only three to four months, from October 2002 through January 2003. (Tr. 172). If this is correct, this may count as an unsuccessful work attempt. 20 C.F.R. § 404.1574(c)(3); 20 C.F.R. § 416.974(c)(3). Further development of the record is necessary.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **GRANTED** and this action be **REMANDED pursuant to Sentence Four of 42 U.S.C. 405(g) with directions to the Administrative Law Judge to reconsider the issues set forth above.**

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 3rd day of August, 2012.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge